```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
WILLIAM PINERO,
                                          01 Civ. 9991 (DLC)(DFE)
                  Petitioner,
                                          MEMORANDUM AND ORDER
        - against -

CHARLES GREINER,

                  Respondent.
-----------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

    I will assume that the reader is familiar with my Memorandum and Order dated May 4, 2005 and filed one day later, *Pinero v. Greiner*, 2005 WL 1075323 (S.D.N.Y. May 5, 2005). That opinion noted that William Pinero had acted *pro se* in this habeas case for some 1 ½ years, and then retained Damond J. Carter, Esq. of Albany, NY in early 2003. In that opinion, I also noted that the Supreme Court had recently decided *Rhines v. Weber*, 125 S.Ct. 1528 (Mar. 30, 2005), which set stricter standards on the "stay and abeyance" approach to mixed habeas petitions. I wrote:

> In view of the *Rhines* decision, and in view of Mr. Carter's lack of diligence from October 4, 2004 to [May 4, 2005], I deny Mr. Carter any further delay while he seeks to exhaust claims in state court.
>
>     \*    \*    \*
>
> . . . I direct Mr. Carter to serve ADA Vassallo with the Motion to Amend and a proposed Amended Petition (either as is, or with any additions or changes he deems necessary) by June 1, 2005, . . . .

    Mr. Carter did not comply. Instead, he faxed me a 3-page affirmation and a 2-page letter (both dated May 20 but faxed on May 26) in which he requests me to allow him to withdraw as counsel. His letter stated: "The delay in presenting Petitioner's case to this Court has resulted from a lack of funding." As will be seen, that statement was misleading.

    I asked for more information in orders dated June 2 and June 14, 2005; my June 2 order warned: "It is my present inclination to grant Mr. Carter's request to be allowed to withdraw, but

probably only on condition that he return all or a part of any fees he has collected." I have now received letters from Pinero dated June 3 and June 7, 2005; they enclose copies of 21 letters that Pinero wrote to Mr. Carter with dates ranging from February 7, 2003 to December 29, 2004, and copies of 7 letters that Mr. Carter wrote to Pinero with dates ranging from August 14, 2003 to May 24, 2005. (I agree with Pinero that those 28 letters are protected by the attorney-client privilege; I will consider them while ruling on the fee dispute, but I will not show them to ADA Vassallo, and I will quote only from the non-privileged portions.) I have also received letters to me from Mr. Carter dated June 9 and June 18, 2005, and a letter to me from Pinero's stepfather Miguel Suarez dated July 5, 2005. I have come to the following findings and conclusions.

     Mr. Carter was admitted to the Bar of the State of New York in 2000, and admitted to the Bar of the Southern District of New York on July 13, 2004. Some time shortly before February 2001, when he was "fresh out off [his] Judicial Clerkship," he opened a solo law practice. (See his 6/18/05 letter to me, p. 1.) His practice appears to concentrate on representing prisoners in appeals and other post-conviction proceedings. Around February 2001, he devised a form contract to be signed by himself, a client-prisoner, and a "financer." (See first exhibit to his 6/18/05 letter to me.) It seems to be undisputed that Mr. Carter and Pinero and Pinero's stepfather all agreed to be bound by this form contract, although Mr. Carter has not produced a signed copy. The first two sections of the form contract say:

> Section One
> Purpose of Employment
> Financer-client employs attorney to represent client as client's attorney at law during the course of appeal proceedings in the matter of People of the State of NY against _____, and empowers attorney to institute such legal action as may be advisable in the judgment of attorney with the advice and consent of client in the matter.
>
> Section Two
> Attorney's Fees
> Client shall pay to attorney for all services rendered under this agreement the sum of a $4000 plus costs, minus the initial fee, this is a one time payment to go as far as the U.S. Court of Appeals if necessary.

Section Two seems to call for an initial installment payment

followed by a one time payment to bring the total to $4,000. However, it is undisputed that Mr. Carter agreed that Pinero's stepfather "would pay about $500 per month." (Mr. Carter's 6/9/05 letter to me, p. 2.)  It is also undisputed that the stepfather paid $500 per month from February through June 2003, and then $300 in September 2003, for a total of $2,800, and has paid nothing further.

    Also undisputed is what Mr. Carter contracted to do for a fee of $4,000.  His June 18, 2005 letter to me, at pages 1-2, says:  "I agreed to file a [CPL 440.10] motion to vacate, [and a motion for] leave [to appeal] therefrom, [and] to file an error coram nobis application, [and a motion for] leave [to appeal] therefrom and to represent Mr. Pinero on his habeas application, and relat[ed] investigation.  * * *  Mr. Pinero's June 7, 2005, response to this Court accurately informs this Court what work I agreed to do and the price I quoted Mr. Pinero."  Pinero's June 7 response specifically included "draft a sworn statement from the Court interpreter" and "complete [a memorandum of law on] those issues which have no memorandum of law attached as of this date."

    Mr. Carter did meet with Pinero in prison four times, all in 2003 -- (1) sometime before February 7, (2) on March 28, (3) on April 30, and (4) on September 10.  At least one of those meetings (on September 10) was attended by Layser Palmer, a Green Haven inmate who had helped Pinero write his *pro se* habeas petition dated October 15, 2001, barely before the one-year statute of limitations expired.

    By June 2003, Pinero's stepfather had paid Mr. Carter $2,500.  In August 2003, Mr. Carter filed a coram nobis application with the First Department; Pinero complained about its quality in a letter to Mr. Carter dated August 21, 2003: ". . . please don't put in any more paper work without me looking at a rough draft of it. . . . The error coram nobis that you put into the court was not up to standard."

    By money order dated September 22, 2003, Pinero's stepfather paid Mr. Carter an additional $300.  By fax letter to me dated July 5, 2005, the stepfather writes:  "I only withheld payment of $1200.  The reason for this situation, was that as many times as I called Mr. Carter and told him that I would resume his payments when he contacted me and informed me what was the progress of the case, he never did."  By letter to Mr. Carter dated December 4, 2003, Pinero wrote:  "[O]n September 10 . . . [y]ou told Mr. Palmer and myself that you would write us the following week and that you would be up to see us two weeks later. . . . I still haven't seen you [since September 10]."  Pinero then indulged in

personal invective and closed: "P.S.  THIS DOESN'T MEAN THAT YOU ARE FIRERED [sic].  I JUST NEED YOU TO DO THE RIGHT THING."  By letter to Mr. Carter dated December 15, 2003, Pinero wrote:  [On September 10,] Mr. Palmer and myself . . . made a list up for you to follow.  You were also supposed to look into starting my memorandum of law for my Fed Hab. . . . This doesn't mean that you are fired [sic]. . . . I will never let you off the hook that easy."

On January 13, 2004, Mr. Carter sent what appears to be his first communication to Pinero in the four months since his September 10 visit.  He unjustifiably attempted to change his fee from $4,000 to $9,000 (or, later, to $6,000).  He did not complain about the $1,200 that was still owed; indeed, he wrote: "your case did not suffer from your financers' reluctance to pay, because they paid as required."  He did not claim (as he does in his June 18, 2005 letter to me) that Pinero presented too many new issues to him and that, "[h]ad it been clear as to what issues would be the focus of my representation, Mr. Pinero's case would have been completed long ago."  Instead, his January 13, 2004 letter to Pinero said:

> . . . [U]nlike the times when we initially met [starting around January 2003], my caseload increased substantially.
>
> . . . [O]f all the financiers, only five[] percent (less than a handful) are making their regular payments. . . . As a result, I have to reduce my caseload . . . . Unfortunately, a reduced caseload will lead to increase[d] costs.
>
> . . . [W]e must renegotiate our contract . . . .

The meaning of "renegotiate" was provided in an enclosed form letter addressed to "Current Clients."  It said:

> . . . I will have to increase my fee by about $5,000 per case.
>
> . . . [P]aying a fee of what would ultimately amount to $8,000 or $9,000 . . . is nominal.

Pinero and his stepfather have steadfastly insisted that Mr. Carter must honor his contracted fee of $4,000.  Yet Mr. Carter did not mention any fee dispute to me for the next 16 months.  He continued to perform some work for Pinero.  He sought leave to

appeal when the Appellate Division denied coram nobis. Shortly before leave was denied, he sent me a declaration dated August 20, 2004 saying that he would file a CPL 440.10 motion with the trial court "within the next 45 days," i.e., by October 4, 2004. In fact, he filed that motion much later, on May 16, 2005.

On May 24, 2005, Mr. Carter sent Pinero a copy of his motion to withdraw as counsel and wrote in a cover letter: "for the fees (or even the increased fee of [an additional] $2,000), it [is] simply impossible to do anything and will create a burden that cannot be carried."

Mr. Carter's June 18, 2005 letter to me says, at pages 3-4:

> [M]y motion to withdraw was done because of the twofold reason that [1] Mr. Pinero and I have been unable to resolve what will be the substance of his post conviction relief motion and [2] our failed negotiations of a new contract.
>
> . . . To the extent that the enclosed contract had been in effect upon my initially representing Mr. Pinero, such contract became void by my verbal conversations with Mr. Pinero as to how much of an increase would be agreed upon.

I emphatically disagree that the 2003 contract "became void." An attorney is not allowed to void a contract on the ground that he later decides that he quoted too low a fee. Moreover, the New York Code of Professional Responsibility, Disciplinary Rule 2-110(A)(3) says: "A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned." As best as I can determine, Mr. Carter has only performed half of the work that he contracted to perform, and hence he has only earned $2,000 (half of the fee he quoted).

As to the argument that Pinero was insisting on raising new issues, the *Rhines* decision forbids a petitioner from using federal court as a long-term "parking lot" while he makes multiple trips to state court. That is why my May 4, 2005 order denied any further time to exhaust, and directed Mr. Carter to serve and file any Amended Petition by June 1, 2005. Moreover, on June 23, 2005, the Supreme Court wrote:

> . . . An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both

> time and type from those [facts] the original
> pleading set forth.

*Mayle v. Felix*, ___ S.Ct. ___, 2005 WL 1469153, p. 4 (June 23, 2005).

In view of *Felix*, it seems likely that, as of October 21, 2001, the statute of limitations expired with respect to (a) the *Batson* ground in Pinero's *pro se* proposed Amended Petition, and (b) the new grounds in Mr. Carter's coram nobis application. Nevertheless, I will now order what I stated as "my present intention" in my June 2, 2005 order:

(a)  I grant Pinero's longstanding motion to proceed on his proposed Amended Petition (Docket Item #5, which contains six grounds and a memorandum of law as to Grounds One, Two and Six);

(b)  I deem that Amended Petition to include the claims in Mr. Carter's coram nobis application (which was exhausted on September 13, 2004), but not to include Mr. Carter's recent motion in Supreme Court, Bronx County.

On June 2, 2005, I sent ADA Vassallo a copy of Docket Item #5. Since I am issuing this order 17 days later than I expected, I will give her until August 18, 2005 to serve and file respondent's opposition to the Amended Petition. Until further order, ADA Vassallo shall serve both Pinero and Mr. Carter. Also by August 18, 2005, ADA Vassallo shall file (but need not serve) the State court record, including, but not limited to, the trial transcript, sentencing minutes, appellate briefs, appellate decisions, and post-trial motions and decisions. (Be sure to write the SDNY civil docket number on each volume of the State court record.)  Respondent should file the originals of all papers, including the State court record, with the Clerk of the Court, not with my Chambers, but deliver a courtesy copy of any affidavits and/or memoranda to my Chambers.

Any reply papers on behalf of Pinero must be served and filed by September 12, 2005.

Pinero's letter dated June 3, 2005 asks me to give Mr. Carter more time to exhaust and to amend; in the alternative, it asks me to appoint a new attorney for him. I deny both requests. "[C]ounsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).  Based on the record so far, I think the merits of Pinero's claims are thin.

6

    I hereby rule on Mr. Carter's motion to withdraw as attorney (Docket Item #17). I deny the motion except to the following extent:

    1. If I receive, by July 29, 2005, proof that Mr. Carter has refunded $800 to Pinero's stepfather, then I will order that Mr. Carter is relieved as attorney for Pinero. Otherwise, I direct Mr. Carter to serve and file reply papers on behalf of Pinero, by September 12, 2005 (with courtesy copies to me and to Pinero and to Pinero's stepfather).

    2. If Mr. Carter complies with the previous sentence, then I will give Pinero's stepfather until 21 days after the date of Mr. Carter's reply papers to send me proof that he has paid Mr. Carter an additional $800 (for a total payment of $3,600). If I do not receive such proof, then I will order that Mr. Carter is relieved as attorney for Pinero. Otherwise, I direct Mr. Carter to serve and file any objections that Pinero may have to my eventual Report and Recommendation to Judge Cote (with courtesy copies to me and to Pinero and to Pinero's stepfather).

    3. If Mr. Carter complies with the previous sentence, and if Pinero wishes to take an appeal from Judge Cote's eventual final decision, then I will give Pinero's stepfather 14 days after the date of Judge Cote's final decision to send me proof that he has paid Mr. Carter an additional $655 (for a total payment of $4,000 in legal fees plus $255 for the cost of the filing fee for a notice of appeal). If I do not receive such proof, then I will order that Mr. Carter is relieved as attorney for Pinero. Otherwise, I direct Mr. Carter to serve and file a notice of appeal (with courtesy copies to me and to Pinero and to Pinero's stepfather), and, if necessary, to apply for a certificate of appealability pursuant to 28 U.S.C. §2253(c).

_____
DOUGLAS F. EATON
United States Magistrate Judge
Room 1360, U.S. Courthouse
500 Pearl Street
New York, NY 10007

Dated:    New York, New York
           July 7, 2005

Copies of this Memorandum and Order were mailed on this date to:

7

```
William Pinero, #97-A-6053
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12583

Damond J. Carter, Esq.
P.O. Box 6365
Albany, NY 12203
(and also by fax to 973-594-9013)

Miguel A. Suarez
914 Havemeyer Avenue
Bronx, NY  10473

Kristin L. Vassallo, Esq.
Assistant District Attorney
198 East 161st Street
Bronx, NY 10451

Hon. Denise L. Cote
```