UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
WILLIAM PINERO,                         :
                                        :
                    Petitioner,         :     01 Civ. 9991 (DLC)
                                        :
        -v-                             :     OPINION AND ORDER
                                        :
CHARLES GREINER,                        :
                                        :
                    Respondent.         :
----------------------------------------X

Appearances:

For Petitioner:
Damond J. Carter
P.O.Box 6365
Albany, New York 12203

For Respondent:
Mary Jo L. Blanchard
Assistant District Attorney
Bronx County District Attorney's Office
198 E. 161st Street
Bronx, New York 10451-3506

DENISE COTE, District Judge:

        William Pinero ("Pinero") brings this petition for a writ

of habeas corpus under 28 U.S.C. § 2254, following his 1997

conviction for murder in the Supreme Court of New York, Bronx

County.  On May 25, 2007, Magistrate Judge Douglas F. Eaton

issued a report (the "Report") recommending that the petition be

denied.  Pinero has objected to the Report.  For the following

reasons, the Report is adopted, and the petition is denied.

BACKGROUND

As described in detail in the Report, the evidence at trial
established that on November 2, 1994, Pinero accompanied another
man, identified as Michael Kealing, to the Bronx office of
victim Glenn Walker, a Christmas tree vendor.  While Pinero
restrained Walker's associate, Dirceline Delgado, Kealing shot
and killed Walker.  The prosecution rested its case primarily on
Delgado's eyewitness identification of Pinero and Pinero's post-
arrest statements.

Delgado was hysterical and able to provide only a limited
description of the two perpetrators immediately following the
murder, but more than seven months later she selected Pinero
from a photo array produced by the police.  Pinero was then
arrested.  More than six months after that identification,
Delgado selected Pinero from a lineup.  Pinero, after receiving
Miranda warnings from the police, provided several incriminating
details about the murder and also repeatedly asked the
investigating police detective "what kind of deal" he would get
if he admitted to being present at the murder.  Pinero's defense
rested on a claim that Delgado had misidentified him and on an
alibi provided by Pinero's former girlfriend, who testified that
Pinero was with her at the time of the murder.

The prosecution also introduced evidence that Pinero was
part of a conspiracy to extort money for the right to sell

2

Christmas trees at a certain Bronx location.  Testimony from
Walker's widow and Delgado established that Walker had paid
protection money to certain unnamed persons in 1992, but stopped
paying 1993 and 1994.  In December 1992, two fires that were
designated "nonaccidental" by the Fire Department occurred at
Walker's Christmas tree lot.  George Nash, who began selling
Christmas trees in that lot after Walker's murder, testified
that Pinero collected $10,000 in protection money from him in
December 1994.  The prosecution argued that all of these events
-- Walker's 1992 payments, the 1993 fires, Walker's 1994 murder,
and Nash's payments to Pinero -- were part of a single extortion
conspiracy concerning the rights to sell Christmas trees on the
lot where both Walker and Nash worked.  Pinero was convicted by
a jury and sentenced to twenty-five years to life.

      Following conviction and sentencing, Pinero's case wended a
circuitous path through the New York state and federal courts.
On direct appeal, Pinero argued that (1) admission of evidence
of uncharged crimes violated his rights to due process and to a
fair trial; (2) the photographic array in which he was
identified was unduly suggestive because he was the only person
pictured with the sole distinguishing characteristic mentioned
by the complainant; (3) the trial court deprived him of the
opportunity to present relevant exculpatory evidence, to wit, a
scar; (4) his due process right to a fair trial was violated by

the prosecution's treatment of his alibi witness and the jury
charge on the alibi defense; (5) a mistrial should have been
granted because of the investigating detective's efforts to
bolster Delgado's identification of Pinero; and (6) he was
deserving of a less harsh prison sentence.  The New York Supreme
Court, Appellate Division unanimously affirmed the conviction
and sentence, see People v. Pinero, 706 N.Y.S.2d 28 (1st Dep't
2000) ("Pinero"), and the New York Court of Appeals denied leave
to appeal, see People v. Pinero, 714 N.Y.S.2d 7 (2000) (Table).
Pinero's conviction became final on October 26, 2000.

        Collateral attacks in state court ensued.  In November
2001, Pinero pro se filed a petition coram nobis, alleging that
his appellate counsel had provided ineffective assistance by
failing to raise (1) ineffective assistance of trial counsel in
failing to request certain pretrial hearings; (2) a
constitutional challenge based on the prosecutor's peremptory
challenges to two black veniremen; (3) the trial court's error
in denying defense counsel's application to remove a particular
juror; and (4) the court's failure to respond adequately to a
jury request for a readback of testimony.  The Appellate
Division denied the petition in 2002.  A second coram nobis
petition was filed by Pinero's retained counsel in the summer of
2003, alleging that (1) Pinero's trial counsel had been informed
that Delgado had perjured herself, but failed to inform the

judge; (2) trial counsel failed to advise Pinero concerning the wisdom of taking a plea offer allegedly made by the state during the trial; and (3) trial counsel failed to act on an allegation by Pinero's parents that certain jurors were sleeping during trial. The Appellate Division denied this petition in 2004. In a subsequent motion under New York Criminal Procedure Law § 440, Pinero essentially restated the arguments made in his second coram nobis petition and added one additional claim that his trial counsel failed to make use of material exculpatory evidence in his possession. The Appellate Division denied this petition and dismissed Pinero's appeal.

While he was seeking collateral relief in state court, Pinero was also pursuing habeas relief in federal court. His pro se habeas petition was received by this district's Pro Se Office on October 22, 2001. By letter dated November 20, 2001, Pinero acknowledged that his petition contained unexhausted ineffective assistance of counsel claims. Those claims were dismissed, and the remainder of the petition was stayed. That stay was lifted in March 2003 upon Pinero's request, and he submitted an amended habeas petition. The amended petition raises the following ten grounds:

> Ground One Petitioner was denied due process when the admission of uncharged crimes deprived him of a fair trial, where the evidence was not relevant for any permissible purpose and its prejudicial effect greatly outweighed its probative value.

    <u>Ground Two</u> Petitioner was denied equal protection where the prosecution was allowed to peremptorily challenge all male prospective jurors during jury selection.

    <u>Ground Three</u> Petitioner was denied his right to a fair trial when an unduly suggestive photograph which singled out petitioner by a single distinguishing characteristic mentioned by the complainant was admitted into evidence.

    <u>Ground Four</u> Petitioner was denied his due process right to a fair trial when the court gave a charge that relieved the people of their burden to disprove petitioner's alibi defense beyond a reasonable doubt and equated the jury's disbelief of the alibi testimony with conclusive proof of petitioner's presence at the crime scene.

    <u>Ground Five</u> Petitioner was denied due process and a fair trial by the prosecutor's cross-examination of petitioner's alibi witness by focusing on juvenile criminal proceedings.

    <u>Ground Six</u> Petitioner was denied effective assistance of trial counsel when counsel neglected to secure a <u>Dunaway</u> hearing after [he had] requested one and was granted a hearing.

    <u>Ground Seven</u> Petitioner was deprived of due process and a fair trial by the court's refusal to allow the defendant to publish his scar to the jury unless the prisoner testified.

    <u>Ground Eight</u> Petitioner was deprived of due process and a fair trial when the Court refused to grant a mistrial for the detective telling the jury that the eyewitness picked petitioner out of the photo array.

    <u>Ground Nine</u> The sentence imposed was harsh and excessive in violation of the Eighth Amendment.

    <u>Ground Ten</u> Appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel due to counsel's failure to use probative impeachment material, failure to alert the trial court to juror misconduct, and improperly advising petitioner with regard to his plea options.

The matter was referred to Magistrate Judge Douglas F. Eaton, and on October 31, 2005, Assistant District Attorney Mary Jo L. Blanchard served and filed an Affidavit in Opposition to

Pinero's habeas petition and argued that it should be denied.
Following issuance of Magistrate Judge Eaton's May 25, 2007
Report, Pinero, now represented by counsel, filed objections to
most of its recommendations and asserted that the state court's
errors

> resulted in Mr. Pinero's right to a fair trial being
> violated where the trial court improperly admitted
> evidence of prior uncharged crimes, charged the jury
> with an imbalanced jury charge, precluded Mr. Pinero's
> right to present evidence in his defense, allowed the
> State to proceed where it employed suggestive
> identification procedures and elicited testimony that
> the state's pivotal witness had identified Mr. Pinero
> by way of pre-trial criminal procedures, and allowed
> the State to improperly cross examine the Defense
> alibi witness and where Mr. Pinero was afforded
> ineffective assistance of trial and appellate counsel.

Moreoever, Pinero noted that his failure to argue any particular
issue did not evidence an intention to abandon that claim.
Rather, "[i]n such a case, where the issue has not been
abandoned, Petitioner will rely upon his previous submissions
for the claim in question." The state replied, and Pinero sur-
replied.

DISCUSSION

The Report identifies ten different claims in the petition
and recommends rejection of each of them. The court "may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C. §
636(b)(1)(C). The court shall make a de novo determination of

7

the portions of the report to which petitioner objects.  28
U.S.C. § 636(b)(1); see United States v. Male Juvenile, 121 F.3d
34, 38 (2d Cir. 1997).  To accept those portions of the report
to which no timely objection has been made, "a district court
need only satisfy itself that there is no clear error on the
face of the record."  Figueroa v. Riverbay Corp., No. 06 Civ.
5364(PAC), 2006 WL 3804581, at *1 (S.D.N.Y. Dec. 22, 2006)
(citation omitted).

        The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, modified the
standard under which federal courts review Section 2254
petitions.  Habeas relief may not be granted unless the state
court's decision was "contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined
by the Supreme Court of the United States" or "was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  28 U.S.C. §§
2254(d)(1),(d)(2).  Each of the claims addressed in the Report
is described below, with particular attention given to those
that are the subject of Pinero's objections.

A.    Grounds Two and Ten Barred by Statute of Limitations

        The Report found that Grounds Two and Ten were barred by
the one-year statute of limitations for habeas petitions imposed
by 28 U.S.C. § 22444(d)(1) because the issues were raised for

the first time in Pinero's <u>coram nobis</u> petitions, both of which
were filed more than one year after his conviction became final,
and were only incorporated into the amended habeas petition
after the statute of limitations expired.[1]  As the Report noted,
"any claim that was not contained in [Pinero's] 10/15/01
petition . . . would be time-barred unless it is subject to
statutory or equitable tolling, or fits under a statutory
exception."  The Report considered and rejected Pinero's
arguments that Grounds Two and Ten fell within various
exceptions that rendered them timely.  Pinero now objects to the
Report's determination and claims that the statute of
limitations period should be "tolled while properly filed
applications for State post-conviction relief are pending."

        Pinero's argument fails because the <u>coram nobis</u> petitions
at issue were filed after the one-year statute of limitations on
his habeas petition had already run.  There was thus no

---

[1]     This finding rests on the following chronology.  Pinero's
conviction became final on October 26, 2000.  His habeas
petition was received by the district court within one year of
that date, on October 22, 2001.  He filed his first <u>coram nobis</u>
motion on November 20, 2001 –– after the one-year statute of
limitations expired.  By order dated June 27, 2003, Magistrate
Judge Eaton instructed Pinero to file his second <u>coram nobis</u>
motion by July 28, 2003, and to provide to the court a detailed
affirmation "within 30 days after Pinero receives the final
decision by the state court."  Pinero filed the motion in
compliance with Magistrate Judge Eaton's order, and the New York
Court of Appeals issued its final decision denying the motion on
September 13, 2004.  Pinero, however, did not inform the court
of this decision until March 8, 2006.

limitations period to be tolled during the pendency of the <u>coram</u> <u>nobis</u> petitions.  Moreover, the Report correctly found that Pinero's argument that the statute of limitations begins to "run anew" each time a state court makes a new decision on a habeas petitioner's applications for state collateral relief must be rejected because "[i]f the one-year period began anew when the state court denied collateral relief, then state prisoners could extend or manipulate the deadline for federal habeas review by filing additional petitions in state court."  <u>Smith v. McGinnis</u>, 208 F.3d 13, 17 (2d Cir. 2000).  Accordingly, Pinero's argument that Grounds Two and Ten are timely fails, and these two proffered bases for habeas relief are barred.

   B.   Ground One -- Evidence of Uncharged Crimes

     The trial court admitted a significant amount of evidence, over Pinero's objection, showing that Walker's murder was part of a pattern of extortionate activity in which Pinero participated -- specifically, evidence of extortion and arson by persons other than Pinero against Walker, and of extortion against Nash.  The evidence would be admitted, the trial court ruled, only "as background narrative, to explain defendant's motive and shared intent to murder Walker, as well as the absence of any mistake or accident."  On direct appeal from Pinero's criminal conviction, the Appellate Division ruled that

the trial court had acted within its discretion in admitting

this evidence because

> [t]he challenged evidence, taken as a whole and in
> connection with the other evidence adduced at trial,
> provided strong circumstantial proof that defendant
> and his companion, acting as agents of a criminal
> conspiracy, killed the deceased, a vendor of Christmas
> trees, because he stopped paying protection money.
> The nexus between defendant, the various events, and
> the instant crime was clearly established.

Pinero, 706 N.Y.S.2d at 29.  The Report rejected Pinero's habeas

challenge to the admission of this evidence because the evidence

was not "sufficiently material to provide the basis for

conviction or to remove a reasonable doubt that would have

existed on the record without it."  Dunnigan v. Keane, 137 F.3d

117, 125 (2d Cir. 1998) (citation omitted).  The Report further

noted that the trial court instructed the jury to consider the

uncharged "wrong acts" only with respect to motive and intent,

and that "[n]othing in the instructions allowed a juror to

consider this as 'propensity evidence.'"

Ground One of Pinero's habeas petition alleges that his due

process rights were violated by the prosecution's introduction

of the evidence of uncharged crimes.  In his letter to the Court

responding to the state's reply to his objections, Pinero frames

his objection thusly:

> [T]he State's use of the uncharged crimes and prior
> bad acts was improper and prejudicial, because (1) all
> parties agree that the Petitioner had no involvement
> in the reprehensible alleged uncharged crimes and

prior bad acts that were somewhat similar to the
allegations alleged at trial, and (2) that Estelle [v.
McGuire, 502 U.S. 62 (1991)] is distinguishable from
Petitioner's case, because in Estelle the prosecution
sought to prove an element of the offense, where as
[sic] in Petitioner's case the prosecution had not
indicted on the conspiracy allegation.

Neither the prosecution nor the trial court suggested that

Pinero was personally involved in each of the "wrong acts"

alleged.  Rather, the trial court made clear that the evidence

was to be considered only to show "that there was a motive for

this particular incident, for this particular crime [with] which

the defendant is charged," and found that this purpose was

within the evidentiary exception established by People v.

Molineux, 61 N.E. 286 (N.Y. 1901).  Pinero does not appear to

cavil with the trial court's finding under New York law, and his

ostensible argument under the United States Constitution fails.

Estelle does not prohibit the consideration of evidence of

uncharged crimes for the purposes identified by the trial court,

nor does it require, as Pinero appears to argue, that the

uncharged acts alleged prove an element of the crime for which

the defendant was charged.[2]

---

[2]    Pinero appears to argue that there was error in the
prosecution's suggestion that Walker's murder was part of an
extortion "conspiracy," because Pinero was charged only with
accomplice liability, and not conspiratorial liability.  There
is no merit to this claim.  The prosecution's, and trial
court's, use of the word "conspiracy" to describe the sequence
of events concerning Christmas tree vendors in a certain Bronx

C.    Grounds Three and Eight -- Photo Array

Ground Three alleges that the photo array in which Delgado identified Pinero was tainted because (1) Pinero's photo was different from the others shown in tint and color, and (2) Pinero's photo was the only one shown in which the man had a "thin as opposed to heavy mustache."  The trial court admitted testimony concerning the array and identification over Pinero's objection, observing that while there were differences among the pictured men's mustaches, "what's more important is that the general racial and facial characteristics of all six of these photographs are strikingly similar."  Further, the trial court found that the police officers who showed Delgado the array had not "in any way engaged in any kind of improper conduct in order to suggest to the witness to select the defendant's photograph from this photo array."  The Report rejected Pinero's contention that the photo array was impermissibly suggestive, finding no reason to disagree with the trial court's assessment of the array and the police officer's presentation of it.  The Report rejected Ground Eight of Pinero's habeas petition because it referred to testimony that was stricken from the trial record.

Pinero objects to both of the Report's findings.  With respect to Ground Three, Pinero first reasserts that he "stood

_____

location does not bear in any way on the particular theory of liability under which Pinero was convicted.

out from all the other persons [in the photo array] and the
photo used was clearly distorted in comparison to the rest."
Second, Pinero makes much of the fact that after Delgado
identified him in a photo array, the police officers decided to
show her a second array.  He claims that this reflected a belief
on the police's part "that the person who held Ms. Delgado down
during the events in question was contained in the second photo
array," and that Delgado's identification of Pinero in the first
array proves the array's suggestiveness.  Moreover, Pinero
claims that Delgado "did in fact identify two persons" in the
photo array that did not include a picture of him, apparently
suggesting that her identification of Pinero in the first array
was unreliable.

    All of Pinero's objections are meritless.  First, Pinero's
objection to the array's suggestiveness does nothing to detract
from the trial court's determination that the array and its
presentation to Delgado were in compliance with constitutional
dictates.  Because this objection merely restates the argument
rejected by the Report, it is again rejected here.  Second, the
police officer who showed the array to Delgado testified that he
originally believed that Pinero had been driving the getaway car
for the perpetrators of Walker's murder, and that the individual
or individuals who restrained Delgado were pictured in the
second array he showed to her.  He was therefore "shocked" when

                                   14

Delgado identified Pinero as the one who had restrained her.
Without more, the police officer's belief about the identity of
a suspect prior to a photo array identification by the sole
eyewitness to a crime is not probative of that array's
suggestiveness.  Accordingly, this argument fails.  Further, the
police officer testified only that Delgado "recognized" two men
in the second photo array; she did not link them in any way to
Walker's murder.  Because this recognition does not bear in any
way on her identification of Pinero as the one who restrained
her, this argument fails as well.

     With respect to Ground Eight, Pinero again avers that the
prosecution violated his right to a fair trial by informing the
jury that Delgado had identified him through the photo array.
As the Report noted, this testimony was stricken from the trial
record, and Pinero's claim therefore lacks merit.

     D.   Ground Four -- Jury Instruction concerning Alibi Defense

     Pinero's ex-girlfriend Stephanie Baldes served as an alibi
witness for him, testifying that he was with her and another man
at the time of Walker's murder.  The trial court declined
Pinero's request to include an instruction that "it is the
People who must disprove the alibi beyond a reasonable doubt,"
and Ground Four alleges that the omission of those words was
error.  Ground Four further posits that the charge as given
relieved the state of the burden of proving Pinero's guilt

beyond a reasonable doubt.  The Report rejected this argument,

finding that the trial court's charge was adequate because it

"instructed the jury about the presumption of innocence" and

"reiterated numerous times that the burden of proof was on the

People to prove every element of the crime beyond a reasonable

doubt."  Pinero states that his defense hinged upon his alibi,

and objects that the trial court failed "to properly articulate

the State's burden of disproving that Defense," thereby

"markedly undermin[ing] the weight to be accorded the Defense's

alibi evidence."  Specifically, Pinero takes issue with the

trial court's instruction that "if the evidence as to alibi,

either by itself or when taken into consideration with all the

other evidence, raises a reasonable doubt in your minds as to

this defendant's guilt, he is entitled to acquittal."  He claims

that this instruction engendered an "inference . . . that the

Defense had the burden of not only reasonable doubt, but the

Defense['] s alibi evidence had to create reasonable doubt."

    As the Supreme Court has instructed, a federal habeas court

must evaluate a trial court's jury instruction to determine

"whether the ailing instruction by itself so infected the entire

trial that the resulting conviction violates due process."  Cupp

v. Naughten, 414 U.S. 141, 147 (1973).  Examining the charge as

a whole, the habeas court must assess "whether there is a

reasonable likelihood that the jury understood the instructions

to allow conviction based on proof insufficient to meet the
standard of proof beyond a reasonable doubt." Vargas v. Keane,
86 F.3d 1273, 1277 (2d Cir. 1996) (citation omitted).  In the
instant case, as the Report observed, the trial court repeatedly
instructed the jury on the presumption of innocence and that it
was the state's "responsibility to prove beyond a reasonable
doubt all the elements of each crime including the fact that the
defendant was present at the time and place of the incident."
The trial court further advised the jury that "[t]he defendant
has no obligation to prove or disprove anything, including his
whereabouts."  Given these instructions, neither the omission to
which Pinero objects nor the alleged inference raised by the
alibi instruction could have led the jury to misunderstand that
the burden of proof rested on the state.  Because there was no
likelihood of a conviction based on insufficient proof, there
was no constitutional error in the jury charge and Pinero's
objection is rejected.

    E.   Ground Five -- Cross-Examination of Alibi Witness

    The trial court allowed the prosecution to question
Pinero's alibi witness, his ex-girlfriend Stephanie Baldes,
about a theft to which she had allegedly pleaded guilty in
Toronto, Canada in 1986, even though the prosecution had no
documentary evidence of the plea.  Pinero claims that this
questioning violated New York law, which he argues proscribes

cross-examination of a witness as to a prior conviction without providing documentary proof substantiating that conviction, and therefore violated his right to a fair trial.  The Report rejected this argument and found that the "prosecutor's limited questioning of Baldes did not deprive Pinero of a fair trial," because (1) the prosecutor "was not able to get the admission he wanted from her," (2) "[t]he jury was free to believe all or part or none of her testimony," and (3) the line of questioning "probably had little effect on the jury, certainly not to the extent to make the trial unfair."

In cursory fashion, Pinero's objection repeats his original contention that the prosecution's cross-examination of Baldes violated New York state law.  This argument, however, does nothing to shed light on whether his conviction violated the United States Constitution.  As the Report made clear, citing Supreme Court precedent, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution . . . of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Because Pinero has not identified any way in which the cross-examination violated his constitutional rights, this objection fails.

F.    Ground Six -- Ineffective Assistance of Trial Counsel

18

Ground Six alleges that Pinero's trial counsel provided ineffective assistance because he failed to conduct pre-trial probable cause hearings under Dunaway v. New York, 442 U.S. 200 (1979). The Report rejected this argument because Pinero's trial counsel had conducted other types of pre-trial hearings, and because Delgado's positive photo array identification of Pinero as the man who had restrained her during Walker's murder provided probable cause for Pinero's arrest. Pinero objects and claims that a Dunaway hearing would have forced the police department to explain "how was it that he became the focal point of this criminal investigation," even though the physical description initially given by Delgado was general and "cryptic."

This argument is meritless. Under Strickland v. Washington, 466 U.S. 668, 687 (1984), a defendant claiming ineffective assistance of counsel must prove that his counsel's performance was deficient and that the deficient performance prejudiced the defense. Because it is beyond peradventure that as there was probable cause for Pinero's arrest -- to wit, Delgado's identification of him in a photo array -- Pinero could not have benefited from a Dunaway hearing. Because there was no prejudice to Pinero, Ground Six of his habeas petition fails.

G.   Ground Seven -- Publication of Pinero's Scar

Pinero claims in Ground Seven that he was deprived of his
due process right to a fair trial by the trial court's refusal
to allow him to publish his scar to the jury unless he
testified.  According to Pinero, his former roommate and a
police detective offered discrepant testimony about whether
Pinero had any distinguishing marks or features, and the
detective's failure to recall the scar on Pinero's head called
into question the reliability of his testimony.  The trial court
appears to have rejected Pinero's request for lack of
foundation, noting that there was nothing in the trial record
describing "when that scar was created or whether it was there
at such time as you claim the detective should have seen it."
The trial court deemed the scar "testimonial," and ruled that
Pinero could only publish it to the jury if he would submit to
cross-examination.

The Report opined that the trial court might have erred in
this ruling but nonetheless found that its decision was not
contrary to, or an unreasonable application of, Supreme Court
precedent establishing that a defendant is not denied "a fair
opportunity to defend against the State's accusations whenever
critical evidence favorable to him is excluded."  Montana v.
Egelhoff, 518 U.S. 37, 53 (1996) (plurality opinion of Scalia,
J.).  Likewise, the Report discerned no error in the Appellate
Division's finding that any error by the trial court "did not

result in prejudice to [Pinero] in view of the minimal probative value of the scar and the fact that defendant made the jury aware of the scar in any event," or its observation that "there was overwhelming evidence of defendant's guilt." Pinero, 706 N.Y.S.2d at 29.

Pinero's objection notes the trial court's possible error in regarding his scar as "testimonial," and states in conclusory fashion that the trial court's preclusion of this evidence "violates Mr. Pinero's right to present evidence."  The Supreme Court has made clear that there is no "absolute entitlement to introduce crucial, relevant evidence," and that "the introduction of relevant evidence can be limited by the State for a valid reason." Egelhoff, 518 U.S. at 53 (plurality opinion of Scalia, J.) (citation omitted).  Here, the trial court denied Pinero's request to publish his scar because of a lack of foundation concerning the scar's provenance and age. Because this was a valid reason for excluding the evidence, there was no error in this evidentiary ruling.

H.    Ground Nine -- Excessive Sentence

Pinero claims that his sentence of twenty-five years to life violates his rights under the Eighth Amendment.  The Report rejected this claim because a sentence within the range permitted by state law -- as this sentence is -- presents no federal constitutional issue. See White v. Keane, 969 F.2d

21

1381, 1383 (2d Cir. 1992).  Pinero does not make any specific objection to the Report's finding, but rather relies upon previous submissions.  Because there was no error in the Report's statement or application of the law, this argument is rejected.

CONCLUSION

Having reviewed the Report with care, there is no facial error in its conclusions.  For the reasons given in this Opinion, Pinero's objections to the Report are denied following a de novo review of his claims.  Pinero's petition is denied. No certificate of appealability shall issue.  Pinero has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted.  Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).  Moreover, any appeal from this order would not be taken in good faith.  See 28 U.S.C. § 1915(a)(3); Coppedge v. United States, 369 U.S. 438, 445 (1962). The Clerk of Court shall dismiss the petition.

SO ORDERED:

Dated:    New York, New York
          September 17, 2007

                              _____
                              DENISE COTE
                              United States District Judge

22

COPIES SENT TO:

Damond J. Carter
P.O. Box 6365
Albany, NY  12203

Mary Jo L. Blanchard
Assistant District Attorney
Bronx County District
  Attorney's Office
198 E. 161st Street
Bronx, NY  10451

Magistrate Judge Eaton